B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>AAC Holding Corp.; Prudential Capital Partners, IV, L.P.; Prudential Capital Partners Management Fund IV, L.P.; Prudential Capital Partners (Parallel Fund) IV, L.P.; and Falcon Strategic Partners IV, L.P. | DEFENDANTS<br>Bradley Dietz; Don MacKenzie; and Cerberus Business Finance, LLC |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>See attached list of Plaintiffs' Counsel. | ATTORNEYS (If Known)<br>Adam Harris<br>Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, NY 10022<br>adam.harris@srz.com |

| PARTY (Check One Box Only)<br>■ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   ■ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Declaratory Judgment (as to all Defendants); 28 U.S.C. §§ 157(b)(1), 1409, and 2201.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>AAC Holdings Corp. | BANKRUPTCY CASE NO.<br>21-30057 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ Jason S. Brookner* | | |
| DATE<br><br>1/14/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Jason S. Brookner | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## LIST OF PLAINTIFFS' COUNSEL

| | |
|---|---|
| Susan B. Hersh<br>State Bar No. 09543925<br>**SUSAN B. HERSH, P.C.**<br>12770 Coit Road, Suite 1100<br>Dallas, Texas 75251<br>Telephone: (972) 503-7070<br>Facsimile: (972) 503-7077<br>Email: susan@susanbhershpc.com<br><br>*Proposed Counsel to Plaintiff AAC Holding* | Jason S. Brookner<br>Texas Bar No. 24033684<br>Lydia R. Webb<br>Texas Bar No. 24083758<br>**GRAY REED & McGRAW LLP**<br>1601 Elm Street, Suite 4600<br>Dallas, Texas 75201<br>Telephone: (214) 954-4135<br>Facsimile: (214) 953-1332<br>Email: jbrookner@grayreed.com<br>      lwebb@grayreed.com<br><br>*Counsel to the Fund Plaintiffs (as to All Defendants)*<br><br>-and-<br><br>Paul M. Basta (*pro hac vice* pending)<br>Lewis R. Clayton (*pro hac vice* pending)<br>Robert A. Britton (*pro hac vice* pending)<br>William A. Clareman (*pro hac vice* pending)<br>Sean A. Mitchell (*pro hac vice* pending)<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>Email: pbasta@paulweiss.com<br>      lclayton@paulweiss.com<br>      rbritton@paulweiss.com<br>      wclareman@paulweiss.com<br>      smitchell@paulweiss.com<br><br>*Counsel to the Fund Plaintiffs (as to all Defendants except the Collateral Agent)* |

Paul M. Basta (*pro hac vice* pending)
Lewis R. Clayton (*pro hac vice* pending)
Robert A. Britton (*pro hac vice* pending)
William A. Clareman (*pro hac vice* pending)
Sean A. Mitchell (*pro hac vice* pending)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: pbasta@paulweiss.com
        lclayton@paulweiss.com
        rbritton@paulweiss.com
        wclareman@paulweiss.com
        smitchell@paulweiss.com

*Counsel to Plaintiffs Prudential Capital
Partners IV, L.P., Prudential Capital
Partners Management Fund IV, L.P.,
Prudential Capital Partners (Parallel Fund)
IV, L.P. and Falcon Strategic Partners IV, LP
(as to all Defendants except Cerberus
Business Finance, LLC)*

Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
**GRAY REED & McGRAW LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
        lwebb@grayreed.com

*Counsel to Plaintiffs Prudential
Capital Partners IV, L.P., Prudential
Capital Partners Management Fund
IV, L.P., Prudential Capital Partners
(Parallel Fund) IV, L.P. and Falcon
Strategic Partners IV, LP (as to all
Defendants)*

Susan B. Hersh
Texas Bar No. 09543925
**SUSAN B. HERSH, P.C.**
12770 Coit Road, Suite 1100
Dallas, Texas 75251
Telephone: (972) 503-7070
Facsimile: (972) 503-7077
Email: susan@susanbhershpc.com

*Proposed Counsel to
Plaintiff AAC Holding Corp.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>AAC HOLDING CORP.,<br><br>          Debtor. | Chapter 11<br><br>Case No. 21-30057 (HDH)<br><br>(Joint Administration Requested) |
| AAC HOLDING CORP., PRUDENTIAL CAPITAL PARTNERS IV, L.P., PRUDENTIAL CAPITAL PARTNERS MANAGEMENT FUND IV, L.P., PRUDENTIAL CAPITAL PARTNERS (PARALLEL FUND) IV, L.P., and FALCON STRATEGIC PARTNERS IV, LP,<br><br>          Plaintiffs,<br><br>    v.<br><br>BRADLEY DIETZ, DON MACKENZIE, and CERBERUS BUSINESS FINANCE, LLC,<br><br>          Defendants. | Adversary No. 21-_____ |

## **COMPLAINT**

Prudential Capital Partners IV, L.P., Prudential Capital Partners Management Fund IV, L.P., Prudential Capital Partners (Parallel Fund) IV, L.P. (collectively, "PCP") and Falcon Strategic Partners IV, LP ("Falcon," and together with PCP, the "Fund Plaintiffs") as creditors and indirect shareholders of American Achievement Corporation ("AAC" or the "Company") and its subsidiaries, and voluntary debtor AAC Holding Corp. ("AAC Holding," and together with Fund Plaintiffs, "Plaintiffs"), as AAC's corporate parent, file this complaint (the "Complaint") against Bradley Dietz ("Dietz"), Don MacKenzie ("MacKenzie"), and Cerberus Business Finance, LLC ("Cerberus" or the "Collateral Agent," and together with Dietz and MacKenzie, "Defendants") and, on information and belief, allege as follows:

## INTRODUCTION

1.      This action seeks to remedy an ineffective attempt by AAC's directors, acting at the Collateral Agent's direction, to replace the boards of AAC's subsidiaries with the Collateral Agent's handpicked directors, with the ultimate goal of facilitating a prejudicial transaction that will benefit the Company's senior lenders to the detriment of all other stakeholders, including the Plaintiffs.  As a result of Defendants' invalid actions, there is a substantial controversy concerning the identity of the directors of AAC's subsidiaries, which are involuntary debtors in these cases.  If left unresolved, this dispute threatens to increase the delay and expense associated with these cases, will create substantial uncertainty as to the exercise of corporate powers by the involuntary debtors, and will produce inevitable litigation at a time when all interested parties should be focused on finding a solution to minimize disruption to AAC's business and maximize its value as a going concern.  Plaintiffs therefore submit that the Court should resolve this issue now, and affirm that the actions taken by AAC's board to replace the subsidiaries' directors were void, and of no force and effect.

2.     AAC is a leading publisher of yearbooks, manufacturer and direct marketer of scholastic and graduation products, including jewelry, apparel, and affinity products, and provider of graduation commencement services, including professional graduation photography services, to the scholastic (K-12), collegiate, and associated alumni markets.  Due in large part to growth-spurring investments by the Fund Plaintiffs since 2015, the Company has grown into a self-sustaining enterprise.  The Fund Plaintiffs are creditors of AAC and its operating subsidiaries, and hold senior subordinated notes in a face amount of $124 million; the Fund Plaintiffs also own, indirectly, controlling equity interests in AAC through its parent company, Plaintiff AAC Holding.  Cerberus serves as the Collateral Agent for AAC's $330 million senior secured term loan facility under a Financing Agreement dated as of September 30, 2015 (as amended, the "<u>Financing Agreement</u>"), and is the majority lender under that facility.

3.     Given the nature of its business, AAC has been significantly but temporarily adversely affected by the ongoing COVID-19 pandemic.  School-related sales account for a substantial proportion of AAC's business, and year-end events such as graduations and yearbooks are substantial drivers of AAC's annual cash flows.  During the pandemic, in addition to the broader economic recession affecting businesses nationwide, school semesters in 2020 ended early and most year-end graduation ceremonies were canceled or deferred, leading to significant declines in graduation product sales, impairing AAC's profitability in 2020.

4.     The Collateral Agent and the lenders it represents (the "<u>Lenders</u>") have seized on the pandemic as an opportunity to profit from their senior position in the capital structure at the expense of AAC's other stakeholders.  To that end, on information and belief, the Collateral Agent is preparing to force AAC into a transaction—effectuated through a sale or foreclosure process (collectively, a "<u>Control Transaction</u>")—premised on a depressed valuation, that will

allow the secured Lenders to walk away with the entire AAC enterprise (or repayment of their loans), and capture or sell off 100% of its considerably greater forecasted equity value. While this plan may serve the Lenders' interests, it threatens to wipe out or impair the junior debt and equity that Plaintiffs own in the process.

5.      That outcome is avoidable. AAC is clearly in need of short term bridge funding—it recently missed an interest payment totaling $5.4 million due to its term lenders and is in default of all of its funded indebtedness—but it remains a fundamentally sound business, and is expected to return to profitability once widespread vaccination leads to the normal resumption of in-person gatherings, likely by the end of this year.

6.      AAC's short term position has been made more precarious by the fact that it is currently in default under the Financing Agreement. Its default arose from its failure to find a potential buyer for its publishing business, which its finance documents required pursuant to an amendment made in March 2020 at the onset of the pandemic. To help manage that default, on December 14, 2020, AAC engaged Houlihan Lokey as a financial advisor to assist it in negotiations with its creditor constituencies, including the Lenders, with the ultimate goal of bridging the Company through the current downturn and preserving its enterprise value.

7.      The Lenders, however, have a different plan for the Company, and upon learning that the Company had retained an independent financial advisor, immediately took steps to seize control. The default under the Financing Agreement gives the Collateral Agent the power, pursuant to a Pledge and Security Agreement dated as of September 30, 2015 (the "Security Agreement"), to exercise irrevocable proxies (the "Proxies") to vote the shares held by AAC, its parent, and several of its direct and indirect subsidiaries. The Collateral Agent and other Lenders opposed the Company's engagement of an independent financial advisor—who the Lenders

believed would not promote their own, narrow interests—and immediately set out to control AAC's Board in response.  The Collateral Agent exercised the Proxies to deliver a stockholder consent removing all members of AAC's Board of Directors—which at that time had five directors and two vacancies—and installing Defendants Dietz and MacKenzie as the sole directors, leaving five vacancies.  The next day, December 16, Dietz and MacKenzie passed an ineffective board resolution by unanimous written consent purporting to install themselves as the sole directors for all of AAC's direct and indirect subsidiaries.  Through this resolution, the Collateral Agent and its directors sought to take complete control of AAC and its subsidiaries, thereby creating a pathway to implement their value-destructive plan.  The Collateral Agent, Dietz, and MacKenzie then acted immediately to fire Houlihan Lokey.

8.     However, Defendants' hastily staged takeover of the Company's governance suffered from a glaring flaw:  Dietz and MacKenzie did not have the authority under the Company's By-Laws to remove the directors of AAC's subsidiaries or install new directors. The By-Laws require a quorum of at least a majority of the directorships (at that time, four of the seven directorships) to act; moreover, the Delaware General Corporation Law ("DGCL") requires a quorum of at least one-third of the total number of directorships comprising the Board (at that time, three of seven directorships) to take any action.  By installing only two directors, and removing the others, the Collateral Agent effectively incapacitated AAC's Board.  As then constituted, AAC's Board could not take any action for the Company, including removing and installing directors at AAC's subsidiaries.  In addition, even if there were a quorum on December 16—and there was not—a resolution by AAC's Board would not be sufficient to replace the directors of all of AAC's subsidiaries.  In the case of subsidiaries that are Delaware corporations, that can be accomplished only at a stockholder meeting for each applicable subsidiary or through

the execution of valid written stockholder consents (as to which the Collateral Agent holds irrevocable proxies). On information and belief, none of this has occurred. On January 10, 2021, in a further ineffective effort to address these omissions, the Collateral Agent executed a second shareholder consent, this time amending the Company's By-Laws to reduce the number of directors from seven to two, and purporting to have retroactive effect to December 15, 2020. Yet this more recent attempt cured none of the defects in the December 16 board resolution. As a matter of Delaware law, the January 10 stockholder consent could not retroactively give a board that lacked a quorum power it did not have when purportedly exercised on December 16. Section 228(c) of the DGCL expressly permits executing stockholder consents effective as of a future time, as does Section 141(f) of the DGCL with respect to director consents, "[b]ut nothing in the DGCL allows the corporation or stockholders to make the effective date [of a stockholder consent] retroactive, and no decisions have blessed doing so." *Mehta* v. *Mobile Posse, Inc.*, No. CV 2018-355, 2019 WL 2025231, at *7 n.55 (Del. Ch. May 8, 2019). Moreover, the January 10 stockholder consent merely changed the number of directorships on *AAC's* board going forward; it did not purport to remove or replace directors at any of AAC's subsidiaries.

9. On information and belief, Defendants' actions, while ineffective, had a purpose that went beyond routine corporate governance. The Collateral Agent represents the interests of AAC's senior secured Lenders, and is itself the largest such Lender to AAC. The Collateral Agent and the other Lenders know very well that AAC's business is sound despite its temporarily depressed cash flows. Yet the Collateral Agent and the Lenders are pursuing a Control Transaction to advance their own interests despite knowing that all other stakeholders—including junior creditors and AAC's direct and indirect equity holders—will come away with nothing, or

pennies on the dollar for the hundreds of millions of dollars they have invested into the business over time.

10. This scheme plainly threatens significant harm to Plaintiffs' interests as creditors and as direct and indirect controlling shareholders of AAC and its subsidiaries. On information and belief, AAC and its subsidiaries cannot pay their debts as they come due, and as such its directors have a fiduciary duty to take into account the interests of all stakeholders, including creditors. Yet, as a result of the Defendants' actions, there is a substantial controversy concerning who the duly appointed fiduciaries of the subsidiaries are, and who has authority to direct the affairs of those debtors. The efficient administration of the chapter 11 cases will be undermined by this uncertainty, which will inevitably expand the scope of litigation and related expenses in the future if not addressed now.

11. As a result of these chapter 11 cases, the Collateral Agent, as the entity holding irrevocable proxies to vote the shares of AAC and its subsidiaries, is precluded from enforcing its voting rights by operation of the automatic stay, and therefore no action may be taken at this time to change the composition of the subsidiaries' boards. *See, e.g.*, *In re Texas Rangers Baseball Partners*, 434 B.R. 393, 404 (Bankr. N.D. Tex. 2010); *In re Hutchison*, No. 01-46374-BJH-11, 2002 Bankr. LEXIS 2014, at *13 (Bankr. N.D. Tex. Jan. 18, 2002); *In re Bicoastal Corp.,* No. 89-8198-8P1,1989 Bankr. LEXIS 2046, at *18 (Bankr. M.D. Fla. Nov. 21, 1989). Plaintiffs' primary interest is in resolving this dispute concerning the identities of the subsidiaries' directors, and to that end Plaintiffs have, concurrently with this filing, sent the Collateral Agent a proposal to appoint mutually agreeable independent directors for AAC and its subsidiaries. Absent such an agreement, this significant controversy requires action by this Court.

12. Plaintiffs therefore seek declaratory relief to affirm that the December 16 resolution purporting to remove and replace the subsidiaries' directors is null and void, and that the directors seated at AAC's subsidiaries prior to that resolution remain duly appointed directors of those entities.

## **PARTIES**

13. Plaintiff Prudential Capital Partners IV, L.P. is a limited partnership organized under the laws of the State of Delaware with its principal place of business at Two Prudential Plaza, Suite 5200, 180 North Stetson Street, Chicago, Illinois, 60601.

14. Plaintiff Prudential Capital Partners Management Fund IV, L.P. is a limited partnership organized under the laws of the State of Delaware with its principal place of business at Two Prudential Plaza, Suite 5200, 180 North Stetson Street, Chicago, Illinois, 60601.

15. Plaintiff Prudential Capital Partners (Parallel Fund) IV, L.P. is a limited partnership organized under the laws of the State of Delaware with its principal place of business at Two Prudential Plaza, Suite 5200, 180 North Stetson Street, Chicago, Illinois, 60601.

16. Plaintiff Falcon Strategic Partners IV, LP is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 21 Custom House Street, 10th Floor, Boston, Massachusetts, 02110.

17. Plaintiff AAC Holding Corp. is a corporation organized under the laws of the State of Delaware with its principal place of business at 1550 W. Mockingbird Lane, Dallas, Texas 75235.

18. Defendant Bradley Dietz is a natural person residing in the State of New York.

19.     Defendant Don MacKenzie is a natural person residing in the State of Michigan.

20.     Defendant Cerberus Business Finance, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 875 Third Avenue, New York, New York, 10022.

## JURISDICTION AND VENUE

21.     This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

22.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

23.     This adversary proceeding relates to following cases pending in the Dallas Division of the United States Bankruptcy Court for the Northern District of Texas: *In re AAC Holding Corp.*, Case No. 21-30057 (HDH); *In re American Achievement Corp.*, Case No. 21-30058-11; *In re Commemorative Brands Inc.*, Case No. 21-30062-11; *In re Taylor Publishing Company*, Case No. 21-30068-11; *In re Iconic Group Inc.*, Case No. 21-30064-11; *In re Taylor Senior Holding Corp.*, Case No. 21-30073-11; *In re TP Holding Corp.*, Case No. 21-30072-11; *In re Taylor Manufacturing Holdings LLC*, Case No. 21-30069-11; *In re Taylor Publishing Manufacturing L.P.*, Case No. 21-30067-11; *In re CBI North America Inc.*, Case No. 21-30061-11; *In re Gaspard Ltd*, Case No. 21-30063-11; *In re University Cap and Gown Inc.*, Case No. 21-30071-11; *In re Willsie Cap and Gown LLC*, Case No. 21-30070-11; *In re Braddock Holding LLC*, Case No. 21-30060-11; *In re Gaspard & Sons, Inc.*, Case No. 21-30065-11; and *In re Gaspard and Sons Mayaguez Inc.*, Case No. 21-30066-11.

24.     This is a core proceeding under 28 U.S.C. § 157(b)(1).

25. Venue is proper pursuant to 28 U.S.C. § 1409.

26. The basis for the relief requested is 28 U.S.C. § 2201.

27. Plaintiffs consent to the entry of final orders or judgment by the Bankruptcy Court.

28. The Defendants are properly joined in this action pursuant to Rule 20 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7020, because the right to relief asserted against all Defendants arises out of the same transaction, occurrence, or series of transactions and occurrences, and questions of law and fact common to all Defendants will arise in this action.

29. This Court has personal jurisdiction over Defendants because, among other things, they reside in the United States, and because they have purposefully availed themselves of the privilege of doing business in this District by, among other things, appointing directors to AAC's board in this District and serving as directors of AAC's Board in this District.

## **BACKGROUND**

### **AAC's Business, Corporate Structure, and Capital Structure**

30. AAC is a leading publisher of yearbooks, manufacturer and direct marketer of scholastic and graduation products, including jewelry, apparel, and affinity products, and provider of graduation commencement services, including professional graduation photography services, to the scholastic (K-12), collegiate, and associated alumni markets.

31. AAC currently operates its business through several direct and indirect subsidiaries. AAC's direct subsidiaries include Iconic Group, Inc. ("Iconic") (a graduation photography business), Taylor Senior Holding Corp. (a producer of yearbooks), Braddock Holding LLC (a holding company for a business manufacturing academic regalia, clergy vestments, choral

robes, and legal and judicial attire), and Commemorative Brands, Inc. (a producer of rings, graduation-related products, and affinity products).

32.     AAC's direct corporate parent is Plaintiff AAC Holding, a Delaware corporation and one of the Debtors in these bankruptcy cases.  AAC Holding is an indirect, wholly-owned subsidiary of AAC Iconic Holdings LLC.  AAC Iconic Holdings LLC is majority owned by the Fund Plaintiffs.

33.     **Exhibit A** to this Complaint is an organizational chart that summarizes the corporate and capital structures of AAC, its parents, and its subsidiaries.

34.     AAC and its affiliates have outstanding funded debt obligations of approximately $494 million, which consist of approximately:

   a)     $339 million in secured borrowings under a term loan (the "OpCo Term Loan") under the Financing Agreement;

   b)     An undrawn revolving line of credit (the "OpCo Revolving Credit Facility") under the Financing Agreement;

   c)     $124 million in principal amount of certain unsecured 14% senior subordinated notes (the "OpCo Subordinated Notes") issued by AAC, Iconic, Taylor Publishing Company, and Commemorative Brands, Inc., and guaranteed by certain other of AAC's direct and indirect parent and subsidiary entities;

   d)     $21 million in principal amount of certain promissory notes issued by AAC Iconic Holdings LLC (the "Subordinated HoldCo Notes");

   e)     $11 million in principal amount of a term loan by AAC Iconic Holdings LLC and guaranteed by Falcon (the "Subordinated HoldCo Term Loan"); and

f)      $5 million in additional unsecured obligations of the Company's operating entities.

35.      Since 2015, Plaintiffs PCP and Falcon have made substantial investments in AAC that have allowed it to grow into the company it is today.  These investments have exceeded $282 million cumulatively, through a combination of subordinated debt and equity investments described in detail below.

36.      Until 2015, the Company was mainly a manufacturing company focused on high school rings and yearbooks.  As of 2015, it had launched no new products in fifteen years and its customer orders were still made in person, largely through folding tables in schools.  Then, in July 2015, the Company agreed to acquire Gaspard LP, a leading North American manufacturer and distributor of academic regalia, clergy vestments, choral robes, and legal and judicial attire (now held by AAC subsidiary Braddock Holding LLC).  In September 2015, the Fund Plaintiffs invested $111 million, in the form of OpCo Subordinated Notes and preferred equity, as part of a refinancing of the Company's balance sheet and the Gaspard acquisition.  PCP and Falcon also helped to recruit new management to develop a plan to transform the Company, including introducing new products for the first time in over a decade and developing digital platforms for distribution of those products.

37.      In February 2017, in exchange for additional preferred equity, the Fund Plaintiffs invested an additional $20 million to fund the Company's capital expenditures as it rapidly invested in digital transformation.

38.      In May 2018, PCP and Falcon spent approximately $64 million to acquire Iconic, a graduation photography business, which was subsequently merged into the AAC corporate structure in May 2019.  In the May 2019 merger, PCP and Falcon invested an additional

$35.3 million in exchange for additional preferred equity, and also agreed to receive interest on the OpCo Subordinated Notes in kind rather than in cash.

39.     In August and September 2018, PCP invested an additional $20 million in the Company to fund overages in digital investments and to ensure the Company had adequate liquidity during this period of growth, in exchange for additional preferred equity.  And in October 2019 and February 2020, PCP and Falcon invested $11 million in the Company to provide liquidity support as the Company implemented its business plan and to support the Company's acquisition of another photography business.

40.     As a result of their substantial investments in AAC's business since 2015, Plaintiffs PCP and Falcon indirectly own a controlling stake in AAC.  At the time of the commencement of these chapter 11 cases, the Fund Plaintiffs together own 97% of the preferred units of AAC Iconic Holdings LLC's membership interests (AAC's ultimate parent company), and 94% of the common units of the AAC Iconic Holdings LLC's membership interests.  Together, they currently hold $124 million of the OpCo Subordinated Notes.

41.     By virtue of their equity ownership, Plaintiffs PCP and Falcon had representatives on the Boards of AAC and its subsidiary Iconic.  PCP's representatives on both Boards were directors Jeffrey Dickson and Stephen Szejner, and Falcon's representatives were Matthew White and Sandeep Alva.  The remaining director on the Boards of AAC and Iconic was AAC's CEO, Robert Myers.

**COVID-19's Severe, but Temporary, Impact on AAC's Business**

42.     The onset of the COVID-19 pandemic has had a dramatic and adverse impact on AAC's business.  The unforeseeable and unprecedented events of the past year have, together with public health measures aimed at combating the virus, caused significant but short term declines in demand for the Company's core products.  In particular, demand for school

graduation products and services has plummeted as high schools and colleges across the United States and Canada ended semesters early, and cancelled or deferred graduation ceremonies and events to prevent in-person gatherings. Prior to the onset of the pandemic, the Company was on track with respect to its business plan and to generate $57 million in EBITDA for fiscal year 2020 (which runs through August 31). Due to the pandemic, however, the Company's 2020 fiscal year EBITDA dropped to approximately $18 million—a 68% decrease.

43. While the pandemic's short-term impact on the Company's cash position has been substantial, the Company's long-term prospects remain strong. Although the Company is presently facing liquidity challenges and lacks the cash to fund its obligations as they come due—it recently missed an interest payment totaling $5.4 million (representing a $3.2 million monthly interest payment and $2.2 million of default interest) on its debt that was due on January 4, 2021 and is in default of the Financing Agreement—the fundamentals of its business have been unaffected. With vaccinations against the COVID-19 virus underway and a macroeconomic recovery and return to normalcy in sight, the Company's future is, once again, bright—as it was before the pandemic began. It is anticipated that, although 2021 financial results will be adversely affected, in a post-pandemic environment the Company will resume its growth trajectory and execute on its business plan.

**The Company Unsuccessfully Tries to Delever by Selling Its Publishing Business**

44. In March 2020, when the effects of the pandemic on AAC's business first became clear, the Company embarked on a plan to sell its publishing business, including Taylor Publishing Company and its subsidiaries, to decrease its leverage and fund its operations. This sale effort was undertaken at the insistence of the Lenders in exchange for covenant relief necessitated by the pandemic, and as of March 31, 2020, the Financing Agreement was amended to require AAC to meet certain milestones in connection with the potential sale. These milestones

included receipt of a non-binding letter of intent, term sheet or other written proposal for the sale by August 31, 2020, and entry into a definitive agreement by November 15, 2020. Meeting the milestones was required to maintain the covenant relief that the Company needed to withstand the effects of the pandemic on its business.

45.     At the same time, Plaintiffs PCP and Falcon stepped up once again to give aid to the Company in the form of new money, and to shore up the Company's balance sheet to help AAC weather the economic downturn. Together, the Fund Plaintiffs invested $20.5 million via the purchase of preferred equity to fund (i) a $13 million pay-down of the OpCo Revolving Credit Facility and (ii) a $7.5 million prepayment of cash interest on the OpCo Term Loan. They also agreed to backstop $5 million of the OpCo Revolving Credit Facility to ensure that the Company's working capital needs were met in the short term.

46.     Despite the Company's marketing efforts, AAC was unable to effectuate a sale of the publishing business and meet its milestones under the Financing Agreement. As a consequence, the Collateral Agent declared an Event of Default on December 1, 2020, and that default has not been cured.

**The Collateral Agent Tries to Seize Control of AAC's Corporate Structure**

47.     The existence of an Event of Default gives the Collateral Agent substantial voting control over AAC and its subsidiaries. Under the Security Agreement, due to the default, the Collateral Agent has an irrevocable proxy to vote the shares of AAC, and the shares of its subsidiaries. Plaintiffs, despite their direct and indirect equity ownership of AAC's stock, cannot influence a vote of AAC's shares while the Event of Default is continuing.

48.     Over the past several months, on information and belief, it has become increasingly clear that the Collateral Agent is seeking to capitalize on its controlling position over the Company and its assets to benefit the Lenders at the expense of all other stakeholders by

effecting a Control Transaction at a depressed valuation that will significantly impair Plaintiffs' interests. This is a cynical attempt to leverage the temporary damage caused by the COVID-19 pandemic for the Collateral Agent's own benefit. The Collateral Agent well knows that AAC will return to profitability once the pandemic has passed, and that the Company's intrinsic value remains robust. Indeed, the Collateral Agent has told members of AAC's management team that it believes in the Company's long-term prospects. The Collateral Agent is seeking to capture that value now for the Lenders, leaving all other stakeholders behind.

49. These efforts were escalated and accelerated by the Collateral Agent in December 2020 immediately after it learned that AAC had retained an independent financial advisor, Houlihan Lokey, to explore strategic options to bridge the Company through the pandemic and manage its default. Under the Security Agreement, various AAC entities—including AAC itself, AAC Holding, Commemorative Brands, Inc., Taylor Senior Holding Corp., TP Holding Corp., and Taylor Publishing Company—pledged their assets, including the shares they hold in their respective subsidiaries, as collateral for their obligations to the Lenders under the Financing Agreement. Section 4(a)(i) of the Security Agreement required these entities to execute the Proxies, which give the Collateral Agent the power, during the continuance of an Event of Default under the Financing Agreement, to vote the shares held by these entities. Section 7(b)(i) of the Security Agreement further provides that, during the continuance of an event of default, "all rights of each Grantor [*i.e.*, each AAC entity party to the Security Agreement] to exercise the voting and other consensual rights which it would otherwise be entitled to exercise . . . shall thereupon become vested in the Collateral Agent, which shall thereupon have the sole right to exercise such voting and other consensual rights."

50.     On December 15, 2020—one day after Houlihan Lokey was retained in the face of the Collateral Agent's opposition—the Collateral Agent used the Proxy granted by AAC Holding (which owns all of AAC's shares) to deliver a written stockholder consent (the "AAC Stockholder Consent").  The AAC Stockholder consent removed all five members then serving on AAC's seven-member Board—Messrs. Myers, White, Alva, Dickson, and Szejner—and replaced them with two directors handpicked by the Collateral Agent, Defendants Dietz and MacKenzie. A copy of the AAC Stockholder Consent is attached to this Complaint as **Exhibit B**.  Following this action, Houlihan Lokey was promptly terminated.

51.     Notably, the AAC Stockholder Consent did not reduce the size of AAC's Board, which at that time had seven members.  AAC's By-Laws require Board action—not shareholder action—to decrease the number of directors.  (Ex. C Art. III § 1); *see also* 8 Del. C. § 141(b) (providing that number of directors is fixed as provided in corporation's by-laws or certificate of incorporation).  Thus, despite AAC's seating of two directors and removal of all others, after the AAC Stockholder Consent, AAC's Board continued to have seven directorships, five of them vacant.

52.     By leaving AAC with only two directors, the Collateral Agent disabled the Board from taking further action with respect to its subsidiaries or otherwise.  AAC's By-Laws provide that "a majority of the whole Board shall constitute a quorum for the transaction of business," and the "whole Board" is defined as the total number of directorships including vacancies.  (Ex. C Art. III §§ 1, 11.)  Thus, without at least four members, AAC's Board lacked a quorum and could not do anything.  Moreover, Delaware law sets a statutory minimum quorum of "1/3 of the total number of directors," 8 Del. C. § 141(b), which on a seven-member board is three directors.  AAC's Board—which at that time had seven directorships but only two members in

office—could not lawfully function, and any action Defendants Dietz and MacKenzie purported to take as directors was necessarily *ultra vires* and in violation of AAC's By-Laws and the DGCL.

53.     Despite their clear legal incapacity to act, the Collateral Agent's new directors immediately began an effort to seize control of AAC's subsidiaries. Specifically, on December 16, 2020, Defendants Dietz and MacKenzie purported to adopt a unanimous written consent of the Board (the "Purported AAC Board Consent") replacing the boards of several AAC subsidiaries (collectively referred to as the "Changed Entities" in the Purported AAC Board Consent). A copy of the Purported AAC Board Consent is attached to this Complaint as **Exhibit C**. The Changed Entities consist of four direct AAC subsidiaries (Iconic, Taylor Senior Holdings Corp., Braddock Holding LLC, and Commemorative Brands, Inc.) and five indirect AAC subsidiaries (TP Holding Corp., Taylor Publishing Company, Taylor Manufacturing Holdings, LLC, Taylor Publishing Manufacturing, L.P., and CBI North America, Inc.). All of the Changed Entities are formed under Delaware law and subject to the DGCL or comparable Delaware statutes applicable to limited liability companies and limited partnerships.

54.     The Purported AAC Board Consent resolved that "all of the Existing Directors be, and each hereby is, removed as a director or manager of [the] Company or each of the Changed Entities," and that "the size of the board of directors, the board of managers or similar governing body of each of the Changes [sic] Entities is fixed [at] two (2) directors or managers, as applicable." The Purported AAC Board Consent further resolved that "each of Bradley Dietz and Don MacKenzie is elected to serve as a director or manager of each of the Changed Entities, as applicable."

55.     The Purported AAC Board Consent was ineffective because the two-person board composed of Dietz and MacKenzie lacked a quorum and had no power to act. But even if

there had been a quorum, the Purported AAC Board Consent would not have been sufficient to affect the boards of any of the Changed Entities that are Delaware corporations. Under Delaware law, a board resolution of a corporate parent, on its own, is not a sufficient legal instrument to change the composition of a subsidiary; directors must be removed and elected by shareholders at an annual meeting or through a valid written stockholder consent. *See* 8 Del. C. §§ 141(k) (requiring stockholder action to remove directors), 211 (regarding taking of stockholder action at a meeting), 228 (regarding taking of stockholder action by written consent). On information and belief, no such meeting was held and no valid written stockholder consents have been delivered.[1]

56. The actions taken by Dietz and MacKenzie on December 16, 2020, were ineffective because the board lacked a quorum. On January 10, 2021, the Collateral Agent appeared to recognize this defect, and adopted a second stockholder consent (the "Second AAC Stockholder Consent") purporting to amend AAC's By-Laws to reduce the number of directorships on AAC's board from seven to two, and purporting to make the amendment retroactive to December 15, 2020. A copy of the Second AAC Stockholder Consent is attached as **Exhibit D**. While the Second AAC Stockholder Consent amended AAC's By-Laws and the number of directorships going forward, it was, as a matter of Delaware law, incapable of

---

[1]  As indicated above, three of the Changed Entities are not Delaware corporations, but rather are limited liability companies or limited partnerships: Braddock Holding LLC, Taylor Manufacturing Holdings, LLC and Taylor Publishing Manufacturing, L.P. With respect to those three entities, the Purported AAC Board Consent stated: "to the extent any of the Changed Entities does not have a board of directors, board of managers or similar governing body, then such Changed Entity shall either continue to be managed by another Changed Entity or shall hereafter be managed by the Company, as applicable." Thus, the Purported AAC Board Consent left unchanged the management of Braddock Holding LLC (which is managed by its sole member, AAC) and Taylor Publishing Manufacturing, L.P. (which is managed by its general partner, Commemorative Brands, Inc., itself one of the Changed Entities), and Taylor Manufacturing Holdings, LLC (which is managed by a single manager). To the extent the Purported AAC Board Consent did attempt to change the management of any of these three entities, it was ineffective under their respective governing agreements and Delaware law.

retroactively imbuing AAC's Board with a quorum as of December 16. *See Mehta* v. *Mobile Posse, Inc.*, No. CV 2018-355, 2019 WL 2025231, at *7 n.55 (Del. Ch. May 8, 2019) ("To be sure, the effective date was misstated on the face of the written consent. . . . But nothing in the DGCL allows the corporation or stockholders to make the effective date retroactive, and no decisions have blessed doing so."). It also did not operate (or even claim to operate) as a written stockholder consent removing or appointing directors at any of AAC's subsidiaries. Both because there was no quorum on December 16, and because no valid written stockholder consent has been given with respect to the removal and replacement of AAC's board, the purported governance changes to AAC's subsidiaries by AAC's directors are null and void.

57.     As explained above, the Security Agreement and Proxies vest sole right to exercise the voting power of these entities in the Collateral Agent during the continuance of an event of default. Thus, any stockholder consent to change the board composition of the Changed Entities must be executed and delivered by the Collateral Agent. The Collateral Agent can no longer exercise that power because all of the shares of the Changed Entities are assets of the involuntary debtors in these chapter 11 cases, and the Collateral Agent cannot exercise control over these assets without violating the automatic stay. *See* 11 U.S.C. § 362; *In re Texas Rangers Baseball Partners*, 434 B.R. 393, 404 (Bankr. N.D. Tex. 2010); *In re Hutchison*, No. 01-46374-BJH-11, 2002 Bankr. LEXIS 2014, at *13 (Bankr. N.D. Tex. Jan. 18, 2002); *In re Bicoastal Corp.,* No. 89-8198-8P1,1989 Bankr. LEXIS 2046, at *18 (Bankr. M.D. Fla. Nov. 21, 1989).

58.     The unlawful actions of the Collateral Agent, Dietz and MacKenzie threaten to impair the Company's management during this critical time and harm Plaintiffs and all other parties-in-interest in these cases. Dietz and MacKenzie have (unlawfully) purported to act in the Company's name and ousted all existing directors (including the Fund Plaintiffs' representatives)

from the Company's operating subsidiaries at a time when the Collateral Agent is making preparations to effect a Control Transaction that will significantly impair the rights of all other stakeholders. Plaintiffs PCP and Falcon's interests will be harmed if this plan is consummated: their junior debt will be significantly impaired, and their equity interests potentially wiped out. Plaintiff AAC Holding's equity value will be similarly harmed.

59. Plaintiffs sincerely hope to resolve these issues consensually, and are willing to do so through the appointment of independent directors at AAC and each of its direct and indirect subsidiaries that are mutually acceptable to Plaintiffs and the Collateral Agent. Plaintiffs have presented this offer to Defendants in correspondence dated today, transmitted concurrently with the filing of this complaint. Moreover, for the sake of preserving value, Plaintiffs are prepared to offer to finance the Company in the short term to bridge AAC to the end of the pandemic and the resumption of normal business activity in its core markets.

60. Accomplishing these goals requires the good faith cooperation of the Collateral Agent and functioning boards of directors with whom to negotiate at AAC's subsidiaries. Indeed, in the context of a chapter 11 case, it is imperative that AAC's subsidiaries have functioning governing bodies. Moreover, lingering disputes regarding the identities of the directors at AAC's subsidiaries—who are also debtors in these cases—will sow considerable, value-destructive uncertainty regarding who has authority to act for those companies and make critical decisions regarding their future. This uncertainty should be resolved now by declaratory relief.[2]

---

[2] While Plaintiffs seek only declaratory relief in this action, they reserve all rights to hold the Collateral Agent, the other Lenders, and their appointed directors to account for damages caused to the Company and its business by their actions.

**CAUSE OF ACTION**

**COUNT I – DECLARATORY JUDGMENT**
**(AGAINST ALL DEFENDANTS)**

61.     Plaintiffs incorporate by reference and re-allege each allegation set forth above as though fully set forth herein.

62.     The Fund Plaintiffs are creditors of AAC and its subsidiaries.  Plaintiffs are also equity holders of AAC Iconic Holdings LLC, which indirectly owns all of the shares of AAC.

63.     Plaintiff AAC Holding directly owns all of the shares of AAC.

64.     On information and belief, AAC is unable to pay its debts as they come due.  As such, AAC and its subsidiaries, directors and controlling shareholders owe fiduciary duties to take into account the interests of all of AAC's stakeholders, including shareholders and creditors.

65.     The Purported AAC Board Consent is invalid because it was signed by only two directors, which did not constitute a lawful quorum under either Article III, Section 11 of AAC's By-Laws or 8 Del. C. § 141(b).  By executing the Purported AAC Board Consent, Dietz and MacKenzie violated (and the Collateral Agent caused Dietz and MacKenzie to violate) their duties to AAC's shareholders and creditors, including Plaintiffs, and invalidly purported to remove the Fund Plaintiffs' representatives from Iconic's board of directors.   The Second AAC Stockholder Consent, which purported to amend AAC's By-Laws to reduce the number of directors to two, was ineffective as a matter of law to retroactively empower the Board to act as of December 16, 2020.

66.     The Purported AAC Board Consent is also legally ineffective to change the composition of the boards of directors of AAC's corporate subsidiaries because, under Delaware law, a shareholder may alter the composition of a corporation's board only at a stockholder meeting or by a valid written consent.  *See* 8 Del. C. §§ 141(k), 211, 228.  On information and belief, no

such stockholder meeting has been held and no such written stockholder consent has been delivered. With respect to AAC's non-corporate subsidiaries, no action compliant with their respective governing documents was taken to change their respective managers or general partner (as applicable). Moreover, under the Security Agreement and Proxies, during the continuation of an event of default under the Financing Agreement, only the Collateral Agent may vote the shares of the relevant AAC subsidiaries, and, on information and belief, the Collateral Agent has not done so. It cannot do so now as a consequence of the automatic stay. The only shareholder consent that purported to remove or replace any directors pertains solely to AAC, in the form of the AAC Stockholder Consent dated December 15, 2020, and does not encompass any of AAC's direct or indirect subsidiaries.

67. Plaintiffs have suffered injury-in-fact due to the execution of the Purported AAC Board Consent, which has undermined the management of AAC's subsidiaries and is in furtherance of the Collateral Agent's scheme to harm Plaintiffs and other stakeholders in AAC and its affiliates, and by the invalid removal of the Fund Plaintiffs' representatives from Iconic's board.

68. There is a substantial, immediate, and real controversy between Plaintiffs and Defendants regarding whether the Purported AAC Board Consent is lawful and valid; regarding whether the Purported AAC Board Consent was effective in changing the composition of the boards (or managers, or general partner, as applicable) of the AAC subsidiaries listed as "Changed Entities" therein; and regarding the identities of the directors, managers, or general partners (as applicable) at the subsidiaries following execution of the Purported AAC Board Consent.

69. Plaintiffs seek a declaration that the Purported AAC Board Consent is void; that the Purported AAC Board Consent was ineffective in changing the composition of the boards

(or managers, or general partner, as applicable) of the AAC subsidiaries listed as "Changed Entities" therein, that a valid shareholder consent was required to change the boards (or managers, or general partner, as applicable) of those entities, and that the composition of the boards (or managers, or general partner, as applicable) of the Changed Entities remains the same as it was on December 15, 2020 before the Purported AAC Board Consent was executed.

## **PRAYER FOR RELIEF**

For the reasons set forth above, Plaintiffs respectfully request judgment be entered in their favor as follows:

a) Declaring that the Purported AAC Board Consent is invalid and void;

b) Declaring that the Purported AAC Board Consent was ineffective in changing the composition of the boards (or managers, or general partner, as applicable) of the AAC subsidiaries listed as "Changed Entities" therein;

c) Declaring that the composition of the boards (or managers, or general partner, as applicable) of the Changed Entities remains the same as on December 15, 2020;

d) Awarding costs and expenses incurred in this action, including, but not limited to, experts' and attorneys' fees; and

e) Granting additional relief as the Court deems just and proper.

Plaintiffs reserve the right to seek all remedies available at law and equity.

Dated: January 14, 2021
      Dallas, Texas

| | |
|---|---|
| */s/ Susan B. Hersh*_____ | */s/ Jason S. Brookner*_____ |
| Susan B. Hersh | Jason S. Brookner |
| State Bar No. 09543925 | Texas Bar No. 24033684 |
| **SUSAN B. HERSH, P.C.** | Lydia R. Webb |
| 12770 Coit Road, Suite 1100 | Texas Bar No. 24083758 |
| Dallas, Texas 75251 | **GRAY REED & McGRAW LLP** |
| Telephone: (972) 503-7070 | 1601 Elm Street, Suite 4600 |
| Facsimile: (972) 503-7077 | Dallas, Texas 75201 |
| Email: susan@susanbhershpc.com | Telephone: (214) 954-4135 |
| | Facsimile: (214) 953-1332 |
| *Proposed Counsel to Plaintiff AAC Holding* | Email: jbrookner@grayreed.com |
| |       lwebb@grayreed.com |
| | |
| | *Counsel to the Fund Plaintiffs (as to All Defendants)* |
| | |
| | -and- |
| | |
| | Paul M. Basta (*pro hac vice* pending) |
| | Lewis R. Clayton (*pro hac vice* pending) |
| | Robert A. Britton (*pro hac vice* pending) |
| | William A. Clareman (*pro hac vice* pending) |
| | Sean A. Mitchell (*pro hac vice* pending) |
| | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| | 1285 Avenue of the Americas |
| | New York, New York 10019 |
| | Telephone: (212) 373-3000 |
| | Facsimile: (212) 757-3990 |
| | Email: pbasta@paulweiss.com |
| |       lclayton@paulweiss.com |
| |       rbritton@paulweiss.com |
| |       wclareman@paulweiss.com |
| |       smitchell@paulweiss.com |
| | |
| | *Counsel to the Fund Plaintiffs (as to all Defendants except the Collateral Agent)* |

Exhibit A



aac
american achievement corporation

# American Achievement Corporate Structure

* Unless noted otherwise, all entities formed in Delaware.
**Equity Pledge covers 65/66% of outstanding equity.

# Exhibit B

# WRITTEN CONSENT OF THE

# SOLE STOCKHOLDER

# OF AMERICAN ACHIEVEMENT CORPORATION

## December 15, 2020

Pursuant to the provisions of Section 228 of the General Corporation Law (the "DGCL") of the State of Delaware and consistent with the provisions of the certificate of incorporation and the bylaws (the "Bylaws") of American Achievement Corporation, a Delaware corporation (the "Corporation"), the undersigned, being the holder of 100% of the outstanding common stock, par value $0.000001 per share, of the Corporation (the "Sole Stockholder"), in lieu of holding a formal meeting, adopts by written consent the following resolutions with the same force and effect as if they had been adopted at a duly convened meeting of stockholders:

WHEREAS, the Corporation is party to (a) that certain Financing Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Financing Agreement"), by and among AAC Holding Corp., a Delaware corporation (the "Parent"), the Corporation, each subsidiary of the Parent listed as a "Borrower" on the signature pages thereto (together with the Corporation and each other Person that executes a joinder agreement and becomes a "Borrower" thereunder, each a "Borrower" and collectively, the "Borrowers"), each subsidiary of the Parent listed as a "Guarantor" on the signature pages thereto (together with the Parent and each other Person that executes a joinder agreement and becomes a "Guarantor" thereunder or otherwise guaranties all or any part of the Obligations, each a "Guarantor" and collectively, the "Guarantors"), the lenders from time to time party thereto (each a "Lender" and collectively, the "Lenders"), Cerberus Business Finance, LLC, a Delaware limited liability company ("CBF"), in its capacity as collateral agent for the Secured Parties (in such capacity, together with its successors and assigns in such capacity, if any, the "Collateral Agent") and PNC Bank, National Association ("PNC"), as administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, the "Administrative Agent" and together with the Collateral Agent, each an "Agent" and collectively, the "Agents"), and (b) that certain Pledge and Security Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Security Agreement", and together with the Financing Agreement, the "Financing Documents"; capitalized terms used herein and not otherwise defined herein are used herein as defined in the Financing Agreement or the Security Agreement, as the case may be), made by each of the Grantors referred to therein in favor of the Collateral Agent;

WHEREAS, pursuant to the Financing Documents, among other things and on the terms and subject to the conditions set forth therein, (a) upon the occurrence and during the continuance of an Event of Default, all rights of each Grantor, including the Parent, to exercise the voting and other consensual rights that it would otherwise be entitled to exercise pertaining to the Pledged Interests shall cease and all such rights shall thereupon become vested in the Collateral Agent, which shall thereupon have the sole right to exercise such voting and other

consensual rights, and (b) each Grantor, including the Parent, has irrevocably appointed the Collateral Agent as its attorney-in-fact and proxy, with full authority in the place and stead of such Grantor and in the name of such Grantor or otherwise, to take any action and to execute any instrument that the Collateral Agent deems necessary or advisable to accomplish the purposes of the Security Agreement, including, without limitation, upon the occurrence and during the continuance of an Event of Default, to take any action which the Collateral Agent may deem necessary or desirable for the collection of any Collateral or otherwise to enforce the rights of each Secured Party with respect to any Collateral;

**WHEREAS**, pursuant to Article II, Section 10 of the Bylaws, any action which may be taken at any meeting of the stockholders may be taken without a meeting, without prior notice and without a vote, if a consent, in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes necessary to take such action at a meeting at which all shares entitled to vote thereon are present and shall be delivered to the Corporation;

**WHEREAS**, pursuant to Article III, Section 3 of the Bylaws, a director of the Corporation may be removed at any time, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors;

**WHEREAS**, the Sole Stockholder wishes to remove, effective as of the date hereof, each of the directors of the Corporation (each, an "Existing Director");

**WHEREAS**, pursuant to Section 223 of the DGCL and Article III, Section 5 of the Bylaws, any vacancy on the board of directors of the Corporation may be filled by persons receiving a plurality of the votes cast at a meeting of stockholders; and

**WHEREAS**, the Sole Stockholder wishes to elect, effective as of the date hereof, Bradley Dietz and Don MacKenzie, each to serve as a director of the Corporation.

**NOW**, **THEREFORE**, **BE IT:**

**RESOLVED**, that, effective as of the date hereof, each of the Existing Directors be, and each hereby is, removed as a director of the Corporation;

**FURTHER RESOLVED**, that the Sole Stockholder hereby elects, effective as of the date hereof, each of Bradley Dietz and Don MacKenzie to serve as a director of the Corporation, each to serve until his earlier death, resignation or removal, and to hold office until his successor shall have been elected and shall have qualified;

**FURTHER RESOLVED,** that the appropriate directors and officers of the Corporation be and each of them is hereby authorized, empowered and directed to do and perform such acts and things which such appropriate director or officer deems necessary or desirable to carry out the foregoing resolutions or to consummate the transactions contemplated by the foregoing resolutions, with such modifications, revisions, amendments or further agreements, instruments or documents as such appropriate director or officer, in his or her discretion, may deem necessary or desirable and in the best interests of the Corporation, and such appropriate director or officer's taking of any such action, for and on behalf and in the name of

DOC ID - 35501369.4

*[Signature Page to Written Consent of the Sole Stockholder of American Achievement Corporation]*

the Corporation, and such appropriate director or officer's execution, delivery and filing, for and on behalf of and in the name of the Corporation, of any such agreement, instrument or document shall be conclusive evidence that he or she did so deem the same to be necessary or desirable and in the best interests of the Corporation;

**FURTHER RESOLVED**, that the Sole Stockholder may deliver this written consent to the Corporation by facsimile or e-mail transmission, and no confirmation of such delivery by the mailing or personal delivery of an executed original of this written consent to the Corporation shall be required in order for this written consent to be effective; and

**FURTHER RESOLVED**, that this written consent shall be irrevocable and filed with the minutes of the proceedings of the stockholders of the Corporation.

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date and year first indicated above.

**AAC HOLDING CORP.**

By: CERBERUS BUSINESS FINANCE, LLC
(as Collateral Agent pursuant to the power of attorney and the other rights granted thereto pursuant to the Financing Documents)

By: _____
Name: Joseph Naccarato
Title: Chief Operating Officer
and Chief Credit Officer

# Exhibit C

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF
## AMERICAN ACHIEVEMENT CORPORATION
### Dated as of December 16, 2020

The undersigned, constituting all of the members of the Board of Directors (the "Board") of American Achievement Corporation, a Delaware corporation (the "Company"), in its capacity as the sole stockholder or sole member of each of Iconic Group, Inc., Taylor Senior Holdings Corp., Braddock Holding LLC and Commemorative Brands, Inc. (collectively, the "Direct Changed Entities"), which in turn are each the sole direct or indirect stockholders, sole members or sole partners of each of TP Holding Corp., Taylor Publishing Company, Taylor Manufacturing Holdings, LLC, Taylor Publishing Manufacturing, L.P. and CBI North America, Inc., as applicable (collectively, the "Indirect Changed Entities" and together with the Direct Changed Companies, the "Changed Entities" and each, individually, a "Changed Entity"), hereby unanimously consent in writing to the adoption of the following resolutions, pursuant to the bylaws of the Company (the "Bylaws") and the operating agreement, bylaws or amended and restated bylaws of each such Changed Entity, as applicable, and applicable law, with the same force and effect as if such resolutions were approved and adopted at a duly constituted meeting of the Board or at a duly constituted meeting of the stockholders, members or partners of each of the Changed Entities, or in accordance with any other equivalent applicable procedure pursuant to which such resolutions may be approved and adopted. The undersigned has executed this consent on the date set forth above.

**WHEREAS**, reference is made to (a) that certain Financing Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Financing Agreement"), by and among AAC Holding Corp., a Delaware corporation (the "Parent"), the Company, each subsidiary of the Parent listed as a "Borrower" on the signature pages thereto (together with the Company and each other Person that executes a joinder agreement and becomes a "Borrower" thereunder, each a "Borrower" and collectively, the "Borrowers"), each subsidiary of the Parent listed as a "Guarantor" on the signature pages thereto (together with the Parent and each other Person that executes a joinder agreement and becomes a "Guarantor" thereunder or otherwise guaranties all or any part of the Obligations, each a "Guarantor" and collectively, the "Guarantors"), the lenders from time to time party thereto (each a "Lender" and collectively, the "Lenders"), Cerberus Business Finance, LLC, a Delaware limited liability company ("CBF"), in its capacity as collateral agent for the Secured Parties (in such capacity, together with its successors and assigns in such capacity, if any, the "Collateral Agent") and PNC Bank, National Association ("PNC"), as administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, the "Administrative Agent" and together with the Collateral Agent, each an "Agent" and collectively, the "Agents"), and (b) that certain Pledge and Security Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Security Agreement", and together with the Financing Agreement, the "Financing Documents"; capitalized terms used herein and not otherwise defined herein are used herein as defined in the Financing Agreement or the

Security Agreement, as the case may be), made by each of the Grantors referred to therein in favor of the Collateral Agent;

**WHEREAS**, the Board deems it advisable and in the best interests of the Company and each Changed Entity to remove, effective as of 12:01 a.m., Eastern Time, on the date hereof (the "Effective Time"), in the case of any Changed Entity with a board of directors, a board of managers or a similar governing body or an individual appointed as a manager, each of the directors or managers of such Changed Entity (collectively, the "Existing Directors");

**WHEREAS**, the Board deems it advisable and in the best interests of the Company and each Changed Entity to fix, effective as of the Effective Time, the size of the board of directors, the board of managers or similar governing body of each such Changed Entity at two (2) directors or managers, as applicable; and

**WHEREAS**, the Board deems it advisable and in the best interests of the Company and each Changed Entity to elect, effective as of the Effective Time, Bradley Dietz and Don MacKenzie, each to serve as a director or manager of each of the Changed Entities, as applicable; provided that, to the extent any of the Changed Entities does not have a board of directors, board of managers or similar governing body, then such Changed Entity shall either continued to be managed by another Changed Entity or shall hereafter be managed by the Company, as applicable.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, that, effective as of the Effective Time, all of the Existing Directors be, and each hereby is, removed as a director or manager of Company or each of the Changed Entities, as applicable;

**FURTHER RESOLVED**, that, effective as of the Effective Time, the size of the board of directors, the board of managers or similar governing body of each of the Changes Entities is fixed two (2) directors or managers, as applicable;

**FURTHER RESOLVED**, that, effective as of the Effective Time, each of Bradley Dietz and Don MacKenzie is elected to serve as a director or manager of the each of the Changed Entities, as applicable, each to serve until his earlier death, resignation or removal, and to hold office until his successor shall have been elected and shall have qualified or as otherwise provided under applicable law; provided that, to the extent any of the Changed Entities does not have a board of directors, board of managers or similar governing body, then such Changed Entity shall either continue to be managed by another Changed Entity or shall hereafter be managed by the Company, as applicable;

**FURTHER RESOLVED,** that Bradley Dietz and Don MacKenzie be, and each of them is hereby authorized, empowered and directed to do and perform such acts and things which any or each deems necessary or desirable to carry out the foregoing resolutions or to consummate the transactions contemplated by the foregoing resolutions, with such modifications, revisions, amendments or further agreements, instruments or documents as may be deemed necessary or desirable and in the best interests of the Company and the Changed Entities, and the taking of any such action, for and on behalf and in the name of the Company or any Changed Entity, and the execution, delivery and filing, for and on behalf of and in the name of the Company and any

Changed Entity, of any such agreement, instrument or document shall be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interests of the Company and/or any Changed Entity, as applicable;

**FURTHER RESOLVED,** that the Board may deliver this written consent by facsimile or e-mail transmission, and no confirmation of such delivery by the mailing or personal delivery of an executed original of this written consent to the Company shall be required in order for this written consent to be effective; and

**FURTHER RESOLVED,** that this written consent shall be irrevocable and filed with the minutes of the proceedings of the Board.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first indicated above.

**BOARD OF DIRECTORS**

_____
Bradley Dietz

_____
Don MacKenzie

# Exhibit D

**WRITTEN CONSENT OF THE**

**SOLE STOCKHOLDER**

**OF AMERICAN ACHIEVEMENT CORPORATION**

**January 10, 2021**

Pursuant to the provisions of Section 228 of the General Corporation Law (the "DGCL") of the State of Delaware and consistent with the provisions of the certificate of incorporation and the bylaws (the "Bylaws") of American Achievement Corporation, a Delaware corporation (the "Corporation"), the undersigned, being the holder of 100% of the outstanding common stock, par value $0.000001 per share, of the Corporation (the "Sole Stockholder"), in lieu of holding a formal meeting, adopts by written consent the following resolutions with the same force and effect as if they had been adopted at a duly convened meeting of stockholders:

**WHEREAS**, the Corporation is party to (a) that certain Financing Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Financing Agreement"), by and among AAC Holding Corp., a Delaware corporation (the "Parent"), the Corporation, each subsidiary of the Parent listed as a "Borrower" on the signature pages thereto (together with the Corporation and each other Person that executes a joinder agreement and becomes a "Borrower" thereunder, each a "Borrower" and collectively, the "Borrowers"), each subsidiary of the Parent listed as a "Guarantor" on the signature pages thereto (together with the Parent and each other Person that executes a joinder agreement and becomes a "Guarantor" thereunder or otherwise guaranties all or any part of the Obligations, each a "Guarantor" and collectively, the "Guarantors"), the lenders from time to time party thereto (each a "Lender" and collectively, the "Lenders"), Cerberus Business Finance, LLC, a Delaware limited liability company ("CBF"), in its capacity as collateral agent for the Secured Parties (in such capacity, together with its successors and assigns in such capacity, if any, the "Collateral Agent") and PNC Bank, National Association ("PNC"), as administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, the "Administrative Agent" and together with the Collateral Agent, each an "Agent" and collectively, the "Agents"), and (b) that certain Pledge and Security Agreement, dated as of September 30, 2015 (as amended, restated, supplemented, modified or otherwise changed from time to time, including any replacement agreement therefor, the "Security Agreement", and together with the Financing Agreement, the "Financing Documents"; capitalized terms used herein and not otherwise defined herein are used herein as defined in the Financing Agreement or the Security Agreement, as the case may be), made by each of the Grantors referred to therein in favor of the Collateral Agent;

**WHEREAS**, pursuant to the Financing Documents, among other things and on the terms and subject to the conditions set forth therein, (a) upon the occurrence and during the continuance of an Event of Default, all rights of each Grantor, including the Parent, to exercise the voting and other consensual rights that it would otherwise be entitled to exercise pertaining to the Pledged Interests shall cease and all such rights shall thereupon become vested in the Collateral Agent, which shall thereupon have the sole right to exercise such voting and other

*[Signature Page to Written Consent of the Sole Stockholder of American Achievement Corporation]*

consensual rights, and (b) each Grantor, including the Parent, has irrevocably appointed the Collateral Agent as its attorney-in-fact and proxy, with full authority in the place and stead of such Grantor and in the name of such Grantor or otherwise, to take any action and to execute any instrument that the Collateral Agent deems necessary or advisable to accomplish the purposes of the Security Agreement, including, without limitation, upon the occurrence and during the continuance of an Event of Default, to take any action which the Collateral Agent may deem necessary or desirable for the collection of any Collateral or otherwise to enforce the rights of each Secured Party with respect to any Collateral;

**WHEREAS**, pursuant to Article II, Section 10 of the Bylaws, any action which may be taken at any meeting of the stockholders may be taken without a meeting, without prior notice and without a vote, if a consent, in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes necessary to take such action at a meeting at which all shares entitled to vote thereon are present and shall be delivered to the Corporation;

**WHEREAS**, pursuant to Article VIII, Section 1 of the Bylaws and Section 109 of the DGCL, the stockholders of the Company entitled to vote have the power to adopt, amend or repeal the Bylaws; and

**WHEREAS**, the Sole Stockholder wishes to amend certain provisions of the Bylaws regarding the number of directors.

**NOW**, **THEREFORE**, **BE IT:**

**RESOLVED**, that, effective as of December 15, 2020, Article III, Section 1 of the Bylaws shall be amended to read in full as follows:

Section 1. <u>Number of Directors</u>. Except as otherwise provided in the Certificate of Incorporation of the Corporation, until such time as the Board of Directors determines otherwise, the number of directors shall be two (2). The number of directors may be reduced (but not to less than one) or increased from time to time by action of a majority of the whole Board, but no decrease may shorten the term of an incumbent director. When used in these By-laws, the term "whole Board" means the total number of directors.

**FURTHER RESOLVED,** that the appropriate directors and officers of the Corporation be and each of them is hereby authorized, empowered and directed to do and perform such acts and things which such appropriate director or officer deems necessary or desirable to carry out the foregoing resolutions or to consummate the transactions contemplated by the foregoing resolutions, with such modifications, revisions, amendments or further agreements, instruments or documents as such appropriate director or officer, in his or her discretion, may deem necessary or desirable and in the best interests of the Corporation, and such appropriate director or officer's taking of any such action, for and on behalf and in the name of the Corporation, and such appropriate director or officer's execution, delivery and filing, for and on behalf of and in the name of the Corporation, of any such agreement, instrument or document

*[Signature Page to Written Consent of the Sole Stockholder of American Achievement Corporation]*

shall be conclusive evidence that he or she did so deem the same to be necessary or desirable and in the best interests of the Corporation;

**FURTHER RESOLVED**, that the Sole Stockholder may deliver this written consent to the Corporation by facsimile or e-mail transmission, and no confirmation of such delivery by the mailing or personal delivery of an executed original of this written consent to the Corporation shall be required in order for this written consent to be effective; and

**FURTHER RESOLVED**, that this written consent shall be irrevocable and filed with the minutes of the proceedings of the stockholders of the Corporation.

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date and year first indicated above.

**AAC HOLDING CORP.**

By: CERBERUS BUSINESS FINANCE, LLC
    (as Collateral Agent pursuant to the power of attorney and the other rights granted thereto pursuant to the Financing Documents)

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
    Name:  Joseph Naccarato
    Title:    Chief Operating Officer
              and Chief Credit Officer

DOC ID - 35596821.3

*[Signature Page to Written Consent of the Sole Stockholder of American Achievement Corporation]*